**RECORD IMPOUNDED**

---

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

---

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1721-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

R.F.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF H.S.F.,

     a Minor.

_____

Submitted October 2, 2019 – Decided October 9, 2019

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FG-16-0066-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender,

of counsel; Carol A. Weil, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Patricia O'Dowd, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; James Joseph Gross, Designated Counsel, on the brief).

PER CURIAM

In this Title 30 guardianship case, R.F., the father of H.S.F.[1] ("Heather") appeals from the trial court's termination of his parental rights after a two-day trial. We affirm the final judgment. We do so substantially for the sound reasons set forth on November 30, 2018 in the twenty-nine-page written opinion of Judge Imre Karaszegi, Jr., who presided over the trial.

The father has a long history of mental illness, including schizoaffective disorder and alcohol use disorder. He has had hallucinations and several in-patient psychiatric hospitalizations. He has a history of drug and alcohol addiction and relapses.

---

[1] We use initials to protect the privacy of the minor. R. 1:38-3(d)(12). We will refer to the child by the pseudonym "Heather."

Heather was born in June 2012. She was first removed from her parents by the Division of Child Protection and Permanency ("the Division") in the fall of 2015 because her mother, M.S., overdosed on heroin. Heather was initially placed in a non-family foster placement. Several months later in April 2016, the mother died.

After the death of the mother, the father made a voluntary surrender of Heather to his sister (the paternal aunt) and her husband in May 2017. Heather was taken out of the foster home and placed in the care of the paternal aunt and uncle.

The aunt and uncle had difficulties in caring for Heather. They reported that Heather was struggling in school, exhibiting "multiple personalities," and behaving in antisocial ways towards their non-adoptive children.

In light of these persisting problems with Heather's placement, in March 2018 the aunt informed the Division that she and her husband were no longer interested in adopting Heather. Several days later, the Division placed Heather back with her previous resource parents.

In the meantime, the father continued to have behavioral and substance abuse problems. However, the father did maintain visitation with Heather and the two of them developed significant bonds.

A-1721-18T1

At the trial, the judge considered testimony from two caseworkers who described the pertinent chronology of events and the Division's involvement. The judge also heard testimony from the Division's psychological expert, Dr. Carolina Mendez, Ph.D. Dr. Mendez recommended termination of the father's parental rights, despite the bonding with his daughter.

Among other things, Dr. Mendez opined that the father's history of mental illness, persisting substance abuse problems, and noncompliance with treatment regimens indicated he would be "overwhelm[ed]" by the responsibilities of parenting Heather. She concluded the father would not be able to "parent independently now or in the foreseeable future." Dr. Mendez also found that Heather had bonded well with her resource family. The resource family would like to adopt Heather, and Heather told Dr. Mendez that she would like to live with them.

The Division also presented expert testimony from a psychiatrist, Joel Federbush, M.D., who had performed an evaluation of the father to assess his parenting abilities. According to Dr. Federbush, the father's history of mental health issues and substance abuse, his living situation, and consistent unemployment all raised significant issues about his ability to parent. The father

admitted to Dr. Federbush he had multiple positive tests for alcohol in the past year and was "hearing voices" as recently as a month prior to the evaluation.

Dr. Federbush acknowledged that the father stated he wanted to parent Heather. But he also noted the father's contrary actual behavior – for instance, not taking advantage of scheduled phone calls with Heather – was inconsistent with this desire. The psychiatrist concluded the father was not currently able to parent Heather, and that this was unlikely to change in the immediate future.

The judge heard competing testimony from a psychological expert, Dr. Andrew Brown called by the defense. Dr. Brown recommended against termination largely because of Heather's deep emotional attachment to her father. Dr. Brown recommended that additional services be provided to potentially enable the father to maintain the relationship with the child.

After considering this testimony and other proofs, Judge Karaszegi concluded all four statutory factors for termination under N.J.S.A. 30:4C-15.1(a) had been proven by the requisite level of clear and convincing evidence. The judge specifically found the testimony of the Division's witnesses to be credible. The Law Guardian supported the court's determination.

On appeal, the father argues: (1) the Division did not adequately consider the paternal aunt as an alternative to termination; (2) reasonable services were

not provided by the Division to the father or to Heather; and (3) the judge erroneously found the Division had satisfied the first and second prongs of the termination standard.

In considering these arguments, we must bear in mind that the scope of our review in an appeal of a judgment terminating parental rights is limited. A reviewing court should not "disturb the family court's decision to terminate parental rights when there is substantial credible evidence in the record to support the court's findings." New Jersey Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008). The reviewing court should defer to the trial court's findings of fact "if supported by adequate, substantial, and credible evidence in the record." New Jersey Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007).

We also must recognize the considerable expertise of the Family Part, which repeatedly adjudicates cases brought by the Division under Title 9 and Title 30 involving the alleged abuse or neglect of children. See, e.g., N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012); N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 476 (App. Div. 2012).

That said, we recognize our scope of review is broadened "where the focus of the dispute is . . . alleged error in the trial judge's evaluation of the underlying

facts and the implications to be drawn therefrom[.]" See N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014) (quoting In re J.T., 269 N.J. Super. 172, 188-89 (App. Div. 1993)). In such instances, a trial court's interpretations of the law and subsequent legal consequences of the facts are afforded no special deference. See R.G., 217 N.J. at 552.

Having applied these standards of review to the record and the trial court's analysis, we discern no persuasive reason to set aside the final judgment of termination. The judge carefully analyzed the evidence in his comprehensive written decision. He articulated ample grounds for why the Division met its burden of proof on all four of the statutory factors.

The judge adopted the opinions of the Division's experts over the more optimistic assessments of the defense expert. The judge had the prerogative to do so, having heard their testimony and evaluated their credibility. Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961).

There was ample evidence presented to establish that the father endangered Heather by his past conduct and behavioral issues, N.J.S.A. 30:4C-15.1(a)(1) (prong one), and that he was unable to eliminate that harm in the future and provide Heather with "a safe and stable home," N.J.S.A. 30:4C-15.1(a)(2) (prong two). There was also credible proof showing that separating

Heather from her resource parents would cause her "serious and enduring emotional or psychological harm to the child." N.J.S.A. 30:4C-15.1(a)(2) (also prong two).

We reject the father's contentions under prong three of the statutory factors, N.J.S.A. 30:4C-15.1(a)(3), that the Division failed to make reasonable efforts to provide services, and failed to adequately consider other alternatives to termination of his rights. There is ample proof the Division provided or offered services to the father, the paternal aunt and uncle, and the child while she was placed with them. The eight-month placement simply did not work out, in part due to Heather's own behavioral issues. In addition, the Division and the trial court adequately considered other alternatives to termination.

The father's suggestion that kinship legal guardianship ("KLG") should have been pursued in this case is of no avail. As attested to by a caseworker's unrefuted trial testimony, the paternal aunt and uncle expressly asked to end the adoption process and have Heather removed from their home. Moreover, since the resource parents are committed to adopting Heather, KLG is inapplicable. See New Jersey Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 508 (2004) (stating KLG, is only available "[w]hen adoption is neither feasible nor likely.")

Id. at 509; see also New Jersey Div. of Child Prot. & Permanency v. M.M., 459 N.J. Super. 246, 264 (App. Div. 2019).

Lastly, the trial court had ample grounds to conclude termination would not cause Heather more harm than good. N.J.S.A. 30:4C-15.1(a)(4) (prong four). The Division's experts articulated cogent reasons that support the judge's conclusion. The judge properly considered and implemented in this regard the strong policies in Title 30 cases to provide a child with permanency. See, e.g., N.J. Div. of Youth & Family Servs. v. S.F., 392 N.J. Super. 201, 209 (App. Div. 2007) ("Children must not languish indefinitely in foster care while a birth parent attempts to correct the conditions that resulted in an out-of-home placement.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1721-18T1